I'm Steve Long, representing a group of former Emory pilots who seek damages from CNF and EWW non-employers for their planned scheme to save money by forcing the shutdown of Emory World Airlines. The two questions which are presented on appeal, one the pleading question and two the question of preemption, can be decided under the holdings of three cases, which I think are the three critical cases in this appeal. Messler, which is California Supreme Court, 1985, holding that vicarious liability in the state of California is not a legal status or a single entity in the pleading. It is simply a pleading with a limited purpose of pushing a hole through a wall to obtain liability. Let's assume you're correct on the – that the district court was wrong in – on its pleading analysis. There's still two questions, though, that remain to me, and I just want to present them to you so you can address them. The first is, aren't the claims under the collective bargaining agreement precluded by or preempted by the RLA? That's the first question. And the second one is, as far as you're claiming a – you have a claim of tortious interference with the side agreement, the agreement between Worldwide and the pilots, doesn't that – don't all those tortious interference claims depend upon there being a breach of that agreement? And wasn't that question decided by an arbitrator, and doesn't that decision settle that issue? Yes, Your Honor, I understand both questions, and let me address them. The CBA and the side agreement. Yes, Your Honor. First on the CBA question, it is not preempted, but if it were, it does not resolve the questions related to tortious interference of the side letter. Right. But it is not preempted, and I think clearly the Ninth Circuit last year in Burnside made clear that you don't automatically preempt the tortious interference claim when there's a collective bargaining agreement involved. You must find, in order to determine that preemption is appropriate, that it is necessary to interpret the agreement. In this case, the question of whether or not it is necessary to interpret the collective bargaining agreement is the question, Your Honor, second question, which is, is it necessary to determine whether or not the force majeure clause, which would have or may have excused the plaintiff's claim? Well, under the collective bargaining agreement, isn't there a requirement that the pilots be not be fired? Yes, Your Honor, there is a requirement that they not be fired. Would you have to read the collective bargaining agreement to come up with that requirement? That is only necessary, Your Honor, for purposes of measuring the damage. The question in our tort interference claim related to the collective bargaining agreement is not whether EWA, the employer's conduct, should be excused. In fact, it may lawfully be excused. It doesn't eliminate the tort interference claim. The tort interference claim is whether CNF, the parent company, can with intent cause a set of circumstances which would cause the force majeure clause to be applicable in order to defend EWA or excuse EWA's conduct and thereby be immune from suit because of the force majeure clause. This is not about EWA's conduct. It's about CNF's conduct. And under Burnside, I think it is very clear that simply looking for purposes of damages is not an interpretation of the collective bargaining agreement. And what we have here is a parent company who we have alleged, and for these purposes should be assumed as true, that their actions were designed to cause the airline to fail. Not EWA's fault, CNF's fault. Well, now, aren't you talking now about the breach of the side agreement? No, Your Honor. I'm talking about the breach of EWA's collective bargaining agreement with the employees. An actionable breach is not a necessary element under California law. That's the third case I wanted to make sure I mentioned to the panel. In Reeves, California Supreme Court, 2004, there you can have a tort interference claim against a party for interfering with a terminable at will relationship between an employer and employee. There's no actionable breach. Well, let me see. The collective bargaining agreement you say requires Emory to hire the union members. Is that right? Yes, Your Honor. And the real culprit here, you say, is CNF. Is CNF who, so that there was an inducement not to hire the union members? Yes. The motivating force being that CNF wants to be non-union? Is that what's going on here? No. Okay. CNF wanted to be out of the business of operating an airline. Just get out? Just get out of the business, which would be okay as long as you paid for your obligations and efficient. If, in fact, the employees and other creditors of the company that was destroyed by this action had been cared for, there wouldn't be a tortious interference claim. But they weren't. They tried to shut the airline down and cause the obligations to go with it. As I understood it, the first problem we have in front of us is whether you can alternatively plead breach of contract or tortious interference. And I understood my colleague's question to suggest that supposing we went past that and we said the court was wrong, you can preach, you can alternatively plead both. Seems to me that, and I guess I haven't heard it, as to the breach of contract, that's certainly preempted by the collective bargaining agreement. That claim. Because you keep talking about tortious interference claim, that's the tort claim. But as to the breach of contract claim, that would certainly be preempted by the collective bargaining agreement. I don't know how to find whether there's a breach without reading the collective bargaining agreement. There is no breach claim against the employer for breach of the collective bargaining agreement. All right. There's not one below, nor was there one. Okay, then the only thing we've got then is the tortious interference, and I wanted you to make sure about that. That's correct. And the only thing we've got is the tortious interference with the contract claim. Your Honor, we have a negligent interference claim also. Well, okay. Going to the tort. That's also a tort. That's also a tort. Yes. Yes, it is a tort. They're both tort claims. That's right. That's why I said tortious. Okay. So, again, we've got to have a contract, don't we? A valid contract? No, Your Honor. That's what the Reeves decision in the California Supreme Court says. You don't have to have a contract. Their relationship was a terminable at will relationship with no contract. Well, a terminable at will relationship is nonetheless an agreement. Yes. I mean, we have terminable at will contracts all the time in employment relationships. They're nonetheless a contract. By implication of law or by express. They're nonetheless contracts, so there is something there, some agreement that one has to have in order to tortiously violate it. Yes, Your Honor. You're not asking for us to suggest that because you thought you might enter into a contract, then somebody stops you from entering into it, that there's a problem. You're saying there was an agreement between the parties. Yes, Your Honor. So if I find that the arbitrator, or if I see that the arbitrator found there was no breach whatsoever in the agreement, then how do I find that there's a valid contract? Your Honor, an actionable breach is not an element of tort interference under California law. Well, I've read your case, and I guess I'm having trouble, because even in your case, there's some kind of an agreement between the parties. Your Honor, and I've... It's terminable at will. Let me describe it this way. What the arbitrator said was that the promise by EWW, which is the letter agreement... Yes. ...in order to consign freight, can't be interpreted, he thought, we were saying, can't be interpreted as a promise to guarantee the operation of the airline on EWW. What we are claiming is that that relationship, which was, he described, and I'll accept for these purposes, a promise to provide freight on a consignment basis, that promise was disrupted by the tortuous conduct of CNF. That's why there's a tort interference claim. An actionable breach does not require a disruption, which may not create liability in the case of the LOA on EWW, or on the collective bargaining agreement on EWA. Those may not be actionable breaches for different reasons, but it doesn't excuse the tortuous conduct, which was the cause of the disruption of those relationships. I think you've made your point, and you've used your time. We'll give you one minute on rebuttal. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Jeffrey DeMaine, appearing for the Airline Pilots Association. I believe this is the shortest oral argument I'll ever make in my career. A few days after filing their notice of appeal, the plaintiffs filed an unopposed motion to dismiss ALPA from the appeal. Everyone agrees ALPA should be dismissed. Unless the Court has any questions, I'll sit down. Thank you. I wondered why the younger preempted the older. That never happened in my law firm, so now I know what the deal is. I'm not sure I like that reference. This is Michael Hallerid. I represent the corporate appellees, CNF, EWA, and EWW. Let me follow up on the questions that the Court had for Mr. Long. With respect to the third and fourth claims for relief, those are the side letter tortious interference claims. Those claims are the third and fourth claims for relief. They incorporate and depend upon the second claim for relief, which is a claim for breach of the side letter, the LOA. Mr. Long's statement that an actionable breach is not required for tortious interference is incorrect. He relies on Reeves v. Hanlon, which is a tortious interference with prospective advantage, which is a completely separate tort. And so in that at-will context in Reeves, there was no contract that was breached because it's prospective advantage. The controlling case on that point is PG&E v. Bear Stearns, which is a California Supreme Court decision, and relied upon in the Milne case decided by this Court to identify the elements for a tortious breach of contract. Because the arbitrator has decided not only that there was no breach of the LOA in the way that is pleaded, he also decided that the contract term, which is alleged to have been disrupted or breached, wasn't part of the contract. Those are two required elements for tortious interference claims with a contract. With all due respect, I believe that the arbitrator's decision has mooted the third and fourth claims for relief that are on appeal, depriving this Court of subject matter jurisdiction. And we have presented that to the Court by letter. I'm sure the Court is familiar with that point. The next thing I'd like to address, again following up on the Court's questions, is the issue of preemption. There are two cases that are highly informative of that issue. The preemption issue relates to the fifth and sixth claims for relief. Those are the claims for interference with the collective bargaining agreement. Lion Airlines v. Norris, a Supreme Court case, states that when an employee's claim is firmly rooted in a breach of the CBA itself, it is going to be preempted. The Court also held that preemption results when the only source of the right, which is at issue, is found in the CBA. And finally, the Court said that when the resolution of a state law claim depends upon interpretation of the collective bargaining agreement, it is preempted. Now, the best example of application of those principles in Norris to this particular case is found in this Court's 1992 decision in Milne v. Sun Carriers. Now, I was excoriated in a letter to the Court that I had relied upon Milne, which had been superseded by Norris. With respect to the appellants, that's a misreading of the law. Milne is a tortious interference case involving a collective bargaining agreement. It involves the question of Section 301 preemption under the Labor Management Relations Act. So, obviously, Norris, which is a Railway Labor Act case, could not have interfered with the doctrine in Milne. Milne is based on Lingle v. Norridge and Alice Chalmers v. Luck, which hold exactly as does Norris, that when a right arises from a collective bargaining agreement or depends upon the collective bargaining agreement or requires the interpretation of the collective bargaining agreement, that it is preempted. Norris also relies upon Alice Chalmers and Lingle. In fact, Norris does not discredit Milne. Norris is the Supreme Court's decision to extend 301 preemption under the LMRA to the RLA, even though there is no direct analog of Section 301 in the Railway Labor Act. In other words, Milne is the law of this circuit with respect to how to approach a tortious interference case with a collective bargaining agreement. There is no doubt in this case that the rights that underlie the claims made by the plaintiffs are rights that are created exclusively by the collective bargaining agreement. This is not a case of employment discrimination arising under the State Fair Employment and Housing Act. This is a claim, tortious interference, both negligent and intentional, with rights created by a collective bargaining agreement. To know what those rights are, to know what their dimensions are, to know what qualifications exist on those rights, requires that you not merely consult the collective bargaining agreement, but that you interpret it. And that's particularly important here, and the proof is in the pudding. These appellants had already filed a grievance through their union over the original shutdown of the airline in August of 2001, and then when the airline could not recover from the shutdown and close the airline permanently and the pilots were permanently furloughed, they filed another grievance under this collective bargaining agreement against the union. They abandoned that grievance because they preferred to bring those exact same issues in a state tort claim against affiliates of the airline. It's the same case. It depends on the collective bargaining agreement and arises from it. All right. Well, you've made an argument that an area of the law that is not really very clear is very clear, but I'm trying to understand the relationships of these parties a little better. CNF is the parent? That's correct, Your Honor. It's a non-operating company that owns the other two companies. Okay. And there is no contract with CNF? That's correct. The underlying grievance here, in this suit as well as in the grievances that you've been talking about, and the so-called breach, I suppose, would be the employer going out of business. Is that basically what? There were grievances filed under both the collective bargaining agreement and the LOA. You're only talking about the CBA, I think. Yeah. There was a grievance filed only against the airline by the union. Well, the pilots want jobs. They wanted their jobs back, but that wasn't going to happen, so then they wanted compensation for the loss of their jobs. That's exactly what they seek in the tortious interference claims, but instead of seeking it from the airline, they're now seeking it from others. So as you see it, the tortious interference claim is aimed at CNF? The tortious interference claim is clearly brought against CNF, the parent, and against the freight company, which is another affiliate owned by CNF. Right. But not the signatory to the collective bargaining agreement. That's correct. They abandoned that grievance and proceeded alternatively against companies that were still in business. But they claim a right under the side agreement against the freight forwarding company, right? There is a separate claim. That's the third and fourth claims for right that is on the side letter. That's the one adjudicated by the arbitrator. By the arbitrator. Right. That's correct. So the piece that we have left, as you see it, is the argument that CNF and the other companies were the ones who caused the breach of the collective bargaining agreement. Caused the breach being the, as you see it, the The loss of the employment created by the CBA. That's correct, Your Honor. Which is basically a failure, they say, a failure to fund the company. That's one business. In business, so that it could fulfill itself. That's correct, Your Honor. And the last point that I would make, and I'll make it very quickly because I have less than a minute to go, is with respect to the torts of negligent interference with contract. Those are the fourth and sixth claims for relief directed both against the side letter and the CBA. There is no tortious interference tort with contract recognized in the state of California. Fifield Manor versus Finston. Negligent interference. Negligent. I'm sorry. Very good. There is no negligent interference. Well, if I could have gone further, I would. But yes, you're right, Your Honor. It's only negligent interference. Fifield is the law. Fifield is the law on that. There is no case cited to you that overturns Fifield. I'll answer any questions if the Court has any. Thank you. Thank you very much, Your Honors. In my one minute, I'd like to make two points. Again, tort interference is a claim which arises out of either a contract which has been breached or a contract which has been disrupted. The word disrupted in the law, clearly in California, has to have some meaning. Well, counsel's suggestion, which is what I was trying to get you to go to, and you didn't necessarily want to go, I guess, he's saying you're really pleading in your idea there, not tortious interference with a contractual relation, but tortious interference with prospective advantage, which you've never pled. Your Honor, I... And that's why I wanted you to think about that. I mean, in order to have a contract with contractual relations, you have to have the contract. If you want to go to prospective advantage, which a lot of courts are going to under the negligence standard, then we don't need a contract. Then all we have to have is prospective advantage. And it seems to me that you're mixing those up. That's what I wanted you to talk about. Yes, Your Honor. And perhaps if the Court would permit us to proceed in the district court, we might ask the district court to allow us to add that claim of prospective advantage. I am, however, here with a tort... If you ask further. We have not asked for that. Tort interference claim for a contract that has been disrupted. It may not have been breached, but it has been disrupted. And that source of the right... Are you relying on Reeves for that? Yes, Your Honor. Okay. The source for that, for that, of that right, that tort right, as it relates to the preemption question, does not come from the CBA. It comes from California state law. The CBA is simply would be a measure of the damage. Okay. Thank you. Okay. It's just argued as submitted for decision. We'll hear the next case, Landau v. Estrella.
judges: Schroeder, Smith, Walker